**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X

BRADEN LINDSTROM, Individually and
on behalf of all others similarly situated,

                        Plaintiff,

        -against-

JAYUD GLOBAL LOGISTICS LIMITED, et al.,

                      Defendants.

----------------------------------------------------------------X

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/13/2026**

**25-CV-9662 (VSB) (KHP)**

**OPINION AND ORDER ON
MOTIONS TO APPOINT LEAD
COUNSEL**

**KATHARINE H. PARKER, United States Magistrate Judge:**

On January 20, 2026, six motions were filed by movants seeking to appoint Lead Plaintiff and approve Lead Counsel. (ECF Nos. 18, 20, 23, 26, 30, 34.) Of the six movants seeking to be made Lead Plaintiff, four (Plaintiffs Flynn, Spillane, Pianalto, and Schuermann) filed notices of non-opposition to the other motion(s) (ECF Nos. 41, 42, 44, 45) and one (Plaintiff Aggarwal) withdrew his motion (ECF No. 46). All notices of non-opposition/withdrawal were filed on the grounds that another candidate—namely, Karim Salem—appears to have the largest financial interest in the outcome of the litigation. Thus, five motions technically remain in contention, but Plaintiffs apart from Salem have concluded that they do not have the largest financial interest in this case. For the reasons stated below, the motion to appoint Salem as Lead Plaintiff and his counsel, Pomerantz LLP, as Lead Counsel, is GRANTED, and all other motions are DENIED.

**BACKGROUND**

This action was commenced as purported securities class actions on behalf of a class of persons and entities that purchased or otherwise acquired securities in Defendant Jayud Global

Logistics Limited ("Jayud" or the "Company") between April 21, 2023, and April 30, 2025, against Jayud, certain current or former executive officers and directors of Jayud, and certain auditors of Jayud (collectively, the "Defendants") under the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

The Complaint details alleged materially false and misleading statements issued during the relevant period in various documents connected to the Company's initial public offering ("IPO") filing documents, as well as subsequent disclosures in its Form 20-F filings and Form 6-K filings and related press releases.  The Complaint alleges that the IPO structure was "intentionally designed to facilitate an eventual pump-and-dump scheme." (ECF No. 1 ¶¶ 21-33.)  The Complaint also alleges that Jayud's auditor opinions were "incorporated into the IPO, registration statements, prospectuses and other 'offerings' of securities the Company filed during the" relevant period. (*Id.* ¶ 34-37.)

But, according to the Plaintiffs, Defendants' representations were materially false and/or misleading, resulting in Jayud's stock price collapsing from around $8 to below $1—a decrease of about 95%—on April 1, 2025. (*Id.* ¶ 39.)  Based on investigations and public reporting, Plaintiffs believe that the price drop was due primarily to a pump-and-dump scheme which was promoted by the Company, its auditors, and its officers. (*Id.* ¶¶ 40-44.)  The Company issued a Form 20-F on April 22, 2025, asserting that it had no knowledge of "material changes to our financial condition" or other business changes to explain the volatility and that there was a "disconnect between [its] share price and . . . actual business performance." (*Id.* ¶ 45.)  This action was filed on November 19, 2025. (*Id.* at 31.)

**LEGAL STANDARD**

**A.  Motions for Appointment of Counsel**

The PSLRA sets forth the standard for selecting a lead plaintiff in class actions brought pursuant to the Securities Exchange Act.  As an initial matter, the plaintiff who files the first action must publish notice to the class within twenty (20) days of filing the action, informing class members of (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. 15 U.S.C. § 78u-4(a)(3)(A)(i).  Within sixty days after publication of the notice, any member or group of members of the proposed class may apply to the court to be appointed as lead plaintiff, whether they have previously filed a complaint in the action or not.  *See id*. § 78u-4(a)(3)(A)-(B).

Next, the PSLRA provides that within ninety days after publication of notice, the Court shall consider any motion made by a purported class member and shall appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members." *Id*. § 78u-4(a)(3)(B)(i).  The PSLRA directs that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal
> > Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The Court's identification of the presumptively most adequate lead plaintiff may be rebutted if class members offer evidence that the presumptive lead plaintiff: (1) "will not fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

### a.  The Applications are Timely

The PSLRA allows any member of the class, or group of class members, to move for appointment as lead Plaintiff within sixty days of the publication of notice that the first action has been filed.  *See id.* § 78u4(a)(3)(A)(I)(II).  Here, the Notice was published on November 20, 2025 (ECF No. 37-2), making all applications on January 20, 2026, timely.[1]

### b.  Largest Financial Interest

The PSLRA presumes that the movant or group of movants asserting the largest financial interest in the relief sought by the class and who otherwise satisfy the requirements of Rule 23 is the most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  Courts in this district consider the following factors in determining who has the largest financial interest: "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate losses

---

[1] The Court applies the default rule in Rule 6 of the Federal Rules of Civil Procedure to reach this conclusion.  Under Rule 6, January 19, 2026, was exactly 60 days after the November 20, 2025 notice, but January 19, 2026, was a court holiday.  Thus, the motions were due the next business day—*i.e.*, January 20, 2026. *See* Fed. R. Civ. P. 6(a)(1); 6(a)(6).

suffered." *Omdahl v. Farfetch Ltd.*, No. 19-cv-8657 (AJN), 2020 WL 3072291, at *2 (S.D.N.Y. June 10, 2020) (citing *Maliarov v. Eros Int'l PLC*, Nos. 15-cv-8956 (AJN), 2016 WL 1367246, at *2 (S.D.N.Y. Apr. 5, 2016)).  "The last factor, financial loss, is the most important of the four." *Id.* (citing *Peters v. Jinkosolar Holding Co., Ltd.*, No. 11-cv-7133 (JPO), 2012 WL 946875, at *5 (S.D.N.Y. March 19, 2012)).

Salem asserts he purchased 218,749 shares (and net shares) of Jayud common stock, expended $1,200,626 in net funds on the stock, and suffered losses of approximately $1,145,720.  The movants do not dispute that this makes Salem the individual who suffered the most financial losses and, indeed, Salem asserts the largest losses.  No party disputes the methodology of calculating losses.[2]  Accordingly, the Court concludes that Salem has suffered the highest amount of losses.

    c.  <u>Rule 23</u>

The final requirement for selecting a lead plaintiff requires that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy.  *See id*. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a)

---

[2] Because different methods of calculating losses often result in large differences in the amount of losses that can be asserted, courts in the Second Circuit have primarily looked to movants' asserted losses, as calculated under the Last-In, First-Out ("LIFO") methodology, when assessing financial interest under the PSLRA. *See Cha v. Kinross Gold Grp.,* No. 12-cv-1203 (PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("[T]he overwhelming trend . . . nationwide has been to use LIFO to calculate such losses.").  Under this method, "stocks acquired most recently are assumed to have been the first sold." *Id.* (citing *Vladimir v. Bioenvision Inc.*, No. 07-cv-6416 (SHS) (AJP), 2007 WL 4526532, at *5 (S.D.N.Y. Dec. 21, 2007)).  LIFO thus considers "gains that an investor might have made on the stock that were attributable to its artificial inflation as a result of the alleged fraud," while other methods fail to account for these gains. *Id.* (citing *In re eSpeed Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005); *Johnson v. Dana Corp.*, 236 F.R.D. 349, 352 (N.D. Ohio 2006), *rev'd on other grounds by Frank v. Dana Corp.*, 237 F.R.D. 171 (N.D. Ohio 2006)).  Also, "LIFO excludes 'in-and-out' transactions, purchases and sales that occur during the class period, *i.e.*, after the stock price was fraudulently inflated and before it dropped due to a corrective disclosure." *Id.* (citing *Vladimir*, 2007 WL 4526532, at *5).  Here, no party argues for an alternative method.

provides that a part or group of parties may serve as a class representative if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  At the lead plaintiff selection stage of litigation, "the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met." *Omdahl v. Farfetch*, No. 19-cv-8657 (AJN), 2020 WL 3072291, at *3 (S.D.N.Y. June 10, 2020) (cleaned up).

At this stage in the litigation, a prima facie showing that the requirements of Rule 23 are met is sufficient. *See In re Fuwei Films,* 247 F.R.D. 432, 437-39 (S.D.N.Y. 2008) (*citing Kaplan v. Gelfond,* 240 F.R.D. 88, 94 (S.D.N.Y. 2007)) ("At this point, a prospective lead plaintiff need only make a preliminary, prima facie showing that his or her claims satisfy the requirements of Rule 23."). Further, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Kuriakose v. Federal Home Loan Mortgage Co.,* No. 08-cv-7281 (JFK) 2008 WL 4974839, at *4 (S.D.N.Y. Nov. 24, 2008) (cleaned up) ("In a motion to be appointed as lead plaintiff, a class member need only make a preliminary showing that the Rule's typicality and adequacy requirements have been satisfied.").

In evaluating the movants' adequacy, courts consider whether (1) their choice of class counsel "is qualified, experienced, and generally able to conduct the litigation"; (2) there is no conflict between them and the members of the class; and (3) they have a "sufficient interest" in

the outcome of the case to ensure vigorous prosecution of the claims. *Id.*  The "typicality"

requirement is satisfied when "each class member's claim arises from the same course of

events, and each class member makes similar legal arguments to prove the defendant's

liability." *Id.* (internal quotation marks omitted).

Salem is an adequate representative with claims typical of the proposed class.  As to

typicality, he alleges that the representations identified in the Complaint violated the Exchange

Act and Rule 10b-5 by making false or misleading statements of material facts or by omitting

material facts necessary to make the statements they did make not misleading.  He says he

purchased Jayud stock during the relevant period and suffered losses from the alleged

misrepresentations/omissions.  Accordingly, his claims are typical.

Second, he is an adequate representative.  Given he has the greatest financial interest,

he has "sufficient interest" to pursue the case vigorously.  Further, the fact that no opposition

has been filed to his motion suggests there is no conflict between his interests and the other

plaintiffs.  In addition, Salem's proposed Lead Counsel – Pomerantz LLP -- is sufficiently

qualified, experienced in securities litigation, and able to conduct the litigation.  Finally, there is

no assertion that he will not fairly or adequately protect the interests of the class or that he is

subject to unique defenses rendering him incapable of adequately representing the class.  Thus,

Salem is an adequate representative.

d.  <u>Lead Counsel Selection</u>

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class,

subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Courts should not disturb the

lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class.

Salem has selected Pomerantz as Lead Counsel for the proposed class.  Pomerantz has

significant experience in securities litigation and has successfully prosecuted multiple securities

fraud class actions. (ECF No. 37-5.)  There is no assertion that the Court must disturb this choice

of lead counsel to protect the interests of the proposed class.  Accordingly, the choice of

Pomerantz is approved.

**CONCLUSION**

For these reasons, the Court **GRANTS** the motion of Salem to be appointed Lead

Plaintiffs and to have their choice of counsel approved as Lead Counsel at ECF No. 34.  All other

motions at ECF Nos. 18, 20, 23, 26, and 30 are DENIED.

**SO ORDERED.**

DATED:        New York, New York
              April 13, 2026

_____
KATHARINE H. PARKER
United States Magistrate Judge