**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE JAYUD GLOBAL LOGISTICS LIMITED SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No.: 1:25-cv-09662-VSB-KSP<br><br>**CLASS ACTION**<br><br>**ORAL ARGUMENT REQUESTED** |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

**STINSON LLP**
Richard J.L. Lomuscio
Nicole Khalouian
140 Broadway, Suite 2330
New York, New York 10005
(646) 883-7471
richard.lomuscio@stinson.com
nicole.khalouian@stinson.com

*Attorneys for Defendants Jayud Global Logistics Limited, Xiaogang Geng, Alan Tan Khim Guan, Lin Bao, Mengmeng Hu, Dun Zhao, Feiyong Li, Steven Gu, Jian Wang, and Jianhong Huang*

**K&L GATES LLP**
Joanna A. Diakos
Zach Jones
599 Lexington Avenue
New York, NY 10022
(212) 536-4807
joanna.diakoskordalis@klgates.com
zach.jones@klgates.com

*Attorneys for Defendants Cogency Global Inc. and Colleen DeVries*

**TABLE OF CONTENTS**


PRELIMINARY STATEMENT ........ 1
FACTUAL BACKGROUND ........ 4
LEGAL STANDARDS ........ 7
ARGUMENT ........ 9

I. PLAINTIFFS' SECTION 11 CLAIMS SHOULD BE DISMISSED ........ 10

A. The AC Is Subject To Rule 9(b)'s Heightened Pleading Standard ........ 10

B. The AC's Section 11 Claim Does Not Meet Rule 9(b)'s Pleading Standard ........ 12

C. The Claims Against The Registered Agent Defendants Should Be Dismissed Or Narrowed. ........ 13

D. The AC Fails To Meet Rule 8's Basic Pleading Standard As To Mr. Guan ........ 15

E. The AC Fails To Meet Rule 8's Basic Pleading Standard As To Traceability ........ 17

F. The Section 11 Claims Against Mr. Zhao, Mr. Li, Mr. Gu, Mr. Wang, and Ms. Huang Fail As The Shelf/December Theory Is Foreclosed On The Merits, And The Remaining IPO-Based Theory Is Time-Barred ........ 20

II. PLAINTIFFS' SECTION 10(b) CLAIM SHOULD BE DISMISSED ........ 23

A. Plaintiffs Fail To Plead Scienter With The Particularity Required Under The PSLRA ........ 24

B. Plaintiffs Fail To Plead Loss Causation ........ 26

III. PLAINTIFFS' SECTIONS 15 AND 20(a) CONTROL-PERSON CLAIMS SHOULD BE DISMISSED ........ 28

CONCLUSION ........ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alcatel Sec. Litig.*,
382 F. Supp. 2d 513 (S.D.N.Y. 2005)....................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7, 8, 19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................4, 9, 28

*In re Axis Capital Holdings Ltd. Secs. Litig.*,
456 F. Supp. 2d 576 (S.D.N.Y. 2006)....................11

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)....................26

*Barnes v. Osofsky*,
373 F.2d 269 (2d Cir. 1967)....................17, 19, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................19

*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
528 U.S. 497 (2017)....................13

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)....................26

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ....................18, 19, 20

*In re Chembio Diagnostics*,
616 F. Supp. 3d 192 (E.D.N.Y. 2022) ....................12

*Cornwell v. Robinson*,
23 F.3d 694 (2d Cir. 1994), *abrogated in part on other grounds, Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ....................23

*Coronel v. Quanta Capital Holdings Ltd.*,
No. 07 Civ. 1405 (RPP), 2009 WL 174656 (S.D.N.Y Jan. 26, 2009) ....................8, 12

*CTS Corp. v. Waldburger*,
573 U.S. 1 (2014)....................22

*Dane v. UnitedHealthcare Ins. Co.*,
974 F.3d 183 (2d Cir. 2020)....................8, 25

*Delfonce v. Eltman Law, P.C.*,
No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249 (E.D.N.Y. Feb. 16, 2017),
*aff'd*, 712 F. App'x 17 (2d Cir. 2017)....................4

*Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*,
987 F. Supp. 2d 369 (S.D.N.Y. 2013)....................15, 16, 17

*Fernandes v. Centessa Pharms. PLC*,
No. 1:22-CV-8805-GHW, 2024 WL 3638254 (S.D.N.Y. Aug. 2, 2024)....................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)....................27

*In re Gentiva Secs. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013)....................11, 13

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012)....................18

*Hogan v. Fischer*,
738 F.3d 509 (2d Cir. 2013)....................23

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020)....................12, 25

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)....................2, 10, 13, 23, 25, 26

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)....................25

*Krim v. pcOrder.com, Inc.*,
402 F.3d 489 (5th Cir. 2005)....................19

*Krupski v. Costa Crociere S.p.A.*,
560 U.S. 538 (2010)....................23

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
No. 07 CIV. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)....................8, 11

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005)....................26, 27

*Macquarie Infrastructure Co. v. Moab Partners, L.P.*,
601 U.S. 257 (2024)....................9

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006)....................12

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)....................9

*In re Micro Focus Int'l Plc Sec. Litig.*,
No. 1:18-cv-06763-ALC, 2020 WL 5817275 (S.D.N.Y. Sept. 29, 2020)....................11

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010)....................9, 28

*In re Pareteum Sec. Litig.*,
No. 19 Civ. 9767 (AKH), 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)....................18

*Police & Fire Ret. Sys of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013)....................12, 13, 22, 23

*In re ProShares Tr. Sec. Litig.*,
728 F.3d 96 (2d Cir. 2013)....................8, 21

*Quantum BioPharma Ltd. v. CIBC World Markets, Inc.*,
Slip Copy, Fed. Sec. L. Rep. P 102 (S.D.N.Y. Mar. 30, 2026) ....................27

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007)....................9

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)....................12, 15

*In re Salomon Analyst AT&T Litigation*,
350 F. Supp. 2d 455 (S.D.N.Y. 2004)....................28

*Slack Techs., LLC v. Pirani*,
598 U.S. 759 (2023)....................17, 20

*In re Smart Techs., Inc. S'holder Litig.*,
295 F.R.D. 50 (S.D.N.Y. 2013) ....................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................24

*In re UBS AG Sec. Litig.*,
No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)....................26

*Wang v. Cloopen Group Holding Limited*,
661 F. Supp. 3d 208 (S.D.N.Y. 2023)....................15

*Xu v. Gridsum Holding Inc.*,
624 F. Supp. 3d 352 (S.D.N.Y. 2022)........................................................................26

*Zornberg v. NAPCO Sec. Techs., Inc.*,
778 F. Supp. 3d 516 (E.D.N.Y. 2025) .................................................................16, 17

**Statutes**

15 U.S.C. § 77...............................................................................................................22

15 U.S.C. § 77k.........................................................................1, 3, 7, 8, 12, 13, 14, 15

15 U.S.C. § 77m.............................................................................................................13

15 U.S.C. § 78u-4 ...............................................................................1, 2, 24, 20, 24, 25

15 U.S.C. § 78t(a) ..................................................................................1, 2, 3, 9, 28

15 U.S.C. § 77o.......................................................................................1, 9, 101 15

15 U.S.C. § 78j........................................................................................1, 3, 9, 23, 25

**Rules**

17 C.F.R. § 229.512 .......................................................................................................16

17 C.F.R. § 240.10b-5..................................................................................................1, 9

17 C.F.R. § 230.430B .........................................................................................15, 16, 17

Fed. R. Civ. P. 8...............................................................................1, 2, 10, 15, 17, 21

Fed. R. Civ. P. 9.................................................................1, 2, 3, 8, 10, 11, 12, 13, 25

Fed. R. Civ. P. 12..........................................................................................1, 7, 20

Fed. R. Civ. P. 15...........................................................................................20, 22

Defendants Jayud Global Logistics Limited ("Jayud" or "Company"), Xiaogang Geng, Alan Tan Khim Guan, Lin Bao, Mengmeng Hu, Dun Zhao, Feiyong Li, Steven Gu, Jian Wang, and Jianhong Huang (collectively with Jayud, "Corporate Defendants," and excluding Jayud, "Individual Defendants"), Cogency Global Inc. ("Cogency"), and Colleen DeVries (together with Cogency, "Registered Agent Defendants," and together with the Corporate Defendants, "Defendants") respectfully submit this Memorandum of Law in support of their motion to dismiss ("Motion") the Amended Complaint ("AC") (ECF No. 70) filed by Lead Plaintiff Karim Salem and named Plaintiff Robert Schuermann (together, "Plaintiffs"), pursuant to Federal Rules of Civil Procedure ("Rule") 8, 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u–4(b)(2). For the reasons set forth below, the Court should dismiss with prejudice the Plaintiffs' claims under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k ("Section 11"); Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Section 10(b)"); Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("Section 20(a)"); and Section 15 of the Securities Act, 15 U.S.C. § 77o ("Section 15").

## **PRELIMINARY STATEMENT**

Strip away the pump-and-dump rhetoric dominating Plaintiffs' 142-page AC, and what remains are four claims that cannot withstand dismissal: a Section 11 claim barred by the statute of repose as to the IPO Registration Statement, foreclosed on the merits as to the Shelf Registration Statement and December Prospectus Supplement, and pleaded as though it does not sound in fraud while reading like nothing but fraud; a Section 10(b) claim that identifies no concealed risk that materialized into a loss and fails to connect any misstatement to any Individual Defendant with the particularity Rule 9(b) and the PSLRA require; and derivative Section 15 and Section 20(a) claims that add nothing once the underlying violations fall away. Each defect requires dismissal.

***First***, the Section 11 claim tied to the IPO Registration Statement is independently time-barred. The IPO closed on April 21, 2023 (AC ¶ 56), and Plaintiffs did not assert any Section 11 claim until June 9, 2026 (AC at 1)—more than six weeks after Section 13's three-year response period expired. That defect is jurisdictional and incurable. Coupled with the incorporation-clause defect addressed below, this timing bar eliminates the entire Section 11 claim against Mr. Zhao, Mr. Li, Mr. Gu, Mr. Wang, and Ms. Huang, whose only connection to the Shelf Registration Statement and December Prospectus Supplement rests on a theory the Shelf's own language forecloses.

***Second***, the Section 11 claim fails on the merits. Plaintiffs cannot avoid Rule 9(b) by reciting a boilerplate disclaimer that the claim "does not sound in fraud" (AC ¶ 384), while building that very claim on allegations of a "multi-phase pump-and-dump scheme" (AC ¶ 4), "devices, schemes, and artifices to defraud" (AC ¶ 374), and a fraud narrative incorporated wholesale into the Section 11 count. (AC ¶ 384.) A Securities Act claim so pleaded must satisfy Rule 9(b), and Plaintiffs do not come close to pleading fraud with the particularity Rule 9(b) demands as to any Individual Defendant.

***Third***, the Section 11 claim further fails under Rule 8's ordinary pleading standard. The AC's theory against Mr. Guan depends on treating the December Prospectus Supplement as creating a new effective date, yet the AC never pleads the "fundamental change" required to do so. Plaintiffs' theory against Mr. Zhao, Mr. Li, Mr. Gu, Mr. Wang, and Ms. Huang depends on an incorporation-by-reference premise that the Shelf's very own quoted language forecloses. (AC ¶ 303.) Plaintiffs' allegation that they purchased shares "traceable to" the IPO Registration Statement "and/or" the Shelf Registration Statement is too equivocal to establish Section 11

standing. (AC ¶¶ 303, 385.) Thus, even apart from Rule 9(b), the Section 11 claim fails at the threshold, on the merits, and defendant by defendant.

***Fourth***, Plaintiffs' Section 10(b) claim fares no better. The AC pleads scienter through titles, generic access allegations, and collective references to "Individual Defendants," not through defendant-specific facts showing that any challenged statement was false when made or that any defendant knew it. Plaintiffs' loss causation theory likewise falls short: the alleged concealed risk—that Jayud's low-float structure made the stock susceptible to volatility and manipulation—was disclosed in the IPO Registration Statement's Risk Factors, and the AC identifies no corrective disclosure or concealed fact revealed on April 1 or 2, 2025. (AC ¶¶ 10, 37, 284, 353.)

***Fifth***, the Section 15 and Section 20(a) control-person claims fail with the underlying Section 11 and Section 10(b) claims. They also fail independently because the AC pleads no particularized facts showing culpable participation by any Individual Defendant.

***Sixth***, the claims against the Registered Agent Defendants underscore the AC's overreach. Ms. DeVries signed the F-1 and F-3 as Cogency's Senior Vice President in that disclosed representative capacity, not as an individual Section 11 signatory. Any IPO-based Section 11 theory is barred by Section 13's three-year repose period, and the remaining F-3 theory rises or falls with the alleged misstatements, traceability, and pleading defects addressed below.

Accordingly, the AC should be dismissed in its entirety, with prejudice.

## FACTUAL BACKGROUND[1]

***Jayud's Business.*** Jayud Global Logistics Limited is a Cayman Islands holding company headquartered in Shenzhen, China, that provides cross-border supply-chain logistics services. (AC ¶ 3.) The Company's Class A ordinary shares trade on the NASDAQ Capital Market under the symbol "JYD." (AC ¶ 3.)

***The Alleged Pre-IPO Reorganization.*** The AC claims that in 2022 Mr. Geng "engineered" Jayud's pre-IPO corporate and capital structure to concentrate voting control in himself. (AC ¶¶ 5, 46.) The AC alleges that on September 6, 2022, the pre-existing shareholders transferred their equity to a newly formed Cayman Islands holding company in exchange for shares held through three BVI entities registered to a common Tortola address, including Europa Investment Holding Limited (wholly owned by Mr. Geng), Tucana Investment Holding Limited (wholly owned by Ms. Huang), and James Webb Holding Limited (wholly owned by Mr. Zhao). (AC ¶¶ 47–48.) This restructuring, paired with a ten-to-one supervoting structure, left Mr. Geng with 58.5% of pre-offering voting power on only 14.1% economic ownership. (AC ¶¶ 5, 49.)

The AC alleges the day after the reorganization, Mr. Geng signed two undisclosed agreements: a Supplemental Agreement obligating Jayud to pay the pre-IPO shareholders RMB 35 million if the IPO closed within twelve months, and a commitment letter to raise or contribute US $6 million within three years of the IPO. (AC ¶¶ 50–52.)

The IPO Registration Documents disclosed the Company's basic share structure—including the 1,250,000-share Class A public float, the Class B supervoting structure, and the BVI

[1] These facts reflect the allegations in the AC and "documents attached as exhibits or incorporated into the complaint by reference, matters of which judicial notice may be taken, [and] documents integral to the complaint." *Delfonce v. Eltman Law, P.C.*, No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249, at *2 (E.D.N.Y. Feb. 16, 2017), *aff'd*, 712 F. App'x 17 (2d Cir. 2017). The Court may also consider "legally required public disclosure documents filed with the SEC[.]" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

entities' common address—along with general risk disclosures concerning low-float, Chinese-issuer stocks. (AC ¶ 82.) After a July 22, 2024 SEC Comment Letter requested additional details about the payment, Jayud voluntarily filed a Form 20-F/A amending its 2023 Form 20-F to disclose payment details. (AC ¶¶ 127–129, 300.)

***The April 2023 IPO.*** On March 21, 2023, Jayud filed a Form F-1/A registration statement ("IPO Registration Statement"), declared effective April 18, 2023. (AC ¶¶ 24, 56.) Then, on April 21, 2023, Jayud completed its IPO, selling 1,250,000 Class A ordinary shares to the public at $4.00 per share. (AC ¶ 56.)

The AC alleges that Mr. Geng signed the IPO Registration Statement as CEO and director; Ms. Bao signed as CFO; Mr. Zhao, Mr. Li, Mr. Gu, and Mr. Wang each signed as directors; and Ms. Huang was named with her consent as COO. (AC ¶¶ 20, 24–28, 138.) This structure—a public float representing approximately 7% of total outstanding equity but less than 2% of total voting power—was "deliberately engineered" by Mr. Geng to make Jayud's stock manipulable. (AC ¶ 46.)

***The June 2024 Shelf Registration Statement.*** In June 2024, Jayud filed a Form F-3 shelf registration statement ("Shelf Registration Statement"). (AC ¶ 302.) As quoted in the AC, the Shelf Registration Statement incorporated by reference only the Company's Annual Reports on Form 20-F for fiscal years 2022 and 2023 and its subsequent Exchange Act reports—not the IPO Registration Statement. (AC ¶ 303.)

***The December 2024 Registered Direct Offering.*** On December 3, 2024, Jayud filed a Form 424B5 prospectus supplement to the Shelf Registration Statement ("December Prospectus Supplement") for a registered direct offering of 50,000,000 Class A ordinary shares at $0.20 per share to seven buyers. (AC ¶¶ 158, 313–314.) Mr. Guan, then Co-CEO, signed the December

Prospectus Supplement in that capacity. (AC ¶¶ 21, 138.) The AC alleges that the December Prospectus Supplement's "Recent Developments" section disclosed board approval of an incentive plan and the mechanics of the already-disclosed September 2024 convertible-debenture and October 2024 PIPE transactions, and separately disclosed that Jayud had borrowed, and by the date of the prospectus had repaid, approximately $1.05 million from Mr. Geng. (AC ¶¶ 177–181, 315.)

***The Alleged Promotion and the April 2025 Crash.*** Plaintiffs allege that between April 1 and April 2, 2025, Jayud's share price fell from a closing high of $7.97 after approximately 45.8 million shares traded in a single session. (AC ¶¶ 10, 353.) The AC contends this volatility traced directly to the low-float, dual-class structure, which made the stock "uniquely susceptible to price manipulation." (AC ¶ 57.) Plaintiffs attribute the run-up to a WhatsApp promotional campaign by unidentified "scammers" and the crash to coordinated selling by December 2024 placement purchasers, none of whom are Individual Defendants. (AC ¶¶ 9–10, 36, 191–199.) The AC alleges Jayud did not disclose the extreme volatility, going-concern doubt, or forged VAT invoices until its Form 20-F filed on April 22, 2025—three weeks later. (AC ¶¶ 209, 219, 222, 354.)

***This Action.*** The original complaint was filed November 19, 2025, asserting claims only under Sections 10(b) and 20(a) against Jayud, Mr. Geng, Mr. Guan, Ms. Bao, Ms. Hu, Friedman, LLP, and Marcum Asia CPAs, LLP. (ECF No. 1.) The AC, filed June 9, 2026, added Lead Plaintiff Karim Salem and Plaintiff Robert Schuermann, asserted claims under Sections 11 and 15, and added as defendants Mr. Zhao, Mr. Li, Mr. Gu, Mr. Wang, and Ms. Huang, together with seven "December Placement Defendants," The Benchmark Company, LLC, and the Registered Agent Defendants. (AC ¶¶ 2, 384; AC at 1.) The AC's allegations against each Individual Defendant are:

- Mr. Geng served as CEO (Co-CEO from December 2024). (AC ¶ 20), signed the IPO Registration Statement, Shelf Registration Statement, and December

Prospectus Supplement, and is a statutory defendant under Sections 11(a)(1) and (a)(2) for each. (AC ¶¶ 20, 335-51, 388(g).) The AC directs the bulk of its scienter allegations at Mr. Geng. (AC ¶¶ 335–351.)

- Ms. Bao served as CFO until March 2025 (AC ¶¶ 22–23), and signed the IPO Registration Statement, Shelf Registration Statement, and December Prospectus Supplement, making her a statutory defendant under Sections 11(a)(1) and (a)(2). (AC ¶ 388(h).) Ms. Hu succeeded Ms. Bao but is not alleged to have had any role in preparing those filings; Plaintiffs assert no Section 11 claim against her. (AC ¶ 23.)

- Mr. Guan became Co-CEO in December 2024—six months after the Shelf's June 2024 effective date—and held that position until July 2025. (AC ¶ 21.) Plaintiffs allege Mr. Guan is a statutory defendant under Sections 11(a)(1) and (a)(2) based solely on his signature on, and his status as an officer at the time of, the December Prospectus Supplement. (AC ¶¶ 21, 138, 302, 388(i).)

- Mr. Zhao, Mr. Li, Mr. Gu, and Mr. Wang have each signed the IPO Registration Statement as directors (Mr. Zhao also as CMO) since March 31, 2023. (AC ¶¶ 24, 26-28), with Plaintiffs extending liability to the Shelf Registration Statement and December Prospectus Supplement on an incorporation theory. (AC ¶¶ 24, 26–28, 138, 388(k)–(n).) The AC attributes no individual allegation to Mr. Li, Mr. Gu, or Mr. Wang. (AC ¶ 37.)

- Ms. Huang has served as COO since March 31, 2023. (AC ¶ 25.) She was named with her consent in the IPO Registration Statement under Section 11(a)(3), with liability extended to the Shelf and December Prospectus Supplement on the same incorporation theory. Plaintiffs also allege she is a Section 15 controlling person. (AC ¶¶ 25, 138, 388(j).)

- The Registered Agent Defendants are named in the Section 11 claim (Third Claim). The AC alleges that Ms. DeVries signed the IPO Registration Statement and the June 2024 Shelf Registration Statement on behalf of Jayud. (AC ¶¶ 42-43, 92.) The Third Claim asserts an untimely IPO theory and a separate Shelf/December theory. (AC ¶¶ 384–388(f).) As to the Shelf, the filings identify Cogency—not DeVries individually—as the authorized U.S. representative and signatory. The operative Fourth Claim is captioned only against the "Individual Defendants," the definition of which excludes both. (AC ¶¶ 42–44, 92, 391-93.)

## <u>LEGAL STANDARDS</u>

***Rule 12(b)(6).*** To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "accept

as true all factual allegations and draw from them all reasonable inferences" but do not "credit conclusory allegations or legal conclusions couched as factual . . . allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020). A complaint relying on "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive. *Iqbal*, 556 U.S. at 678.

***Rule 9(b).*** Complaints sounding in fraud must "state with particularity the circumstances" supporting the fraud allegation. Fed. R. Civ. P. 9(b). That requires specifying "(1) the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 CIV. 0976 (LAP), 2008 WL 4449280, at *11 (S.D.N.Y. Sept. 30, 2008) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995)).

***Section 11.*** Under Section 11, any person who acquired a security under a registration statement that either (1) "contained an untrue statement of a material fact" or (2) "omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading" may sue every person who, *inter alia*, signed the registration statement, served as a director or partner in the issuer, or acted as an underwriter with respect to the security. 15 U.S.C. § 77k(a). "Liability attaches to a security's issuer, its underwriter, and certain other statutorily enumerated parties pursuant to section 11 ... if any part of the operative registration statements" contained such a misstatement or omission. *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 101 (2d Cir. 2013) (quotation marks omitted).

***Section 15.*** Claims under Section 15 hinge on the success of a claim under Section 11, as Section 15 imposes liability on any person who, by or through stock ownership, agency, or otherwise, "controls any person" found liable under Section 11. 15 U.S.C. § 77o; *see In re Morgan*

*Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010) ("[T]he success of a claim under section 15 relies, in part, on a plaintiff's ability to demonstrate primary liability under section [] 11.").

***Section 10(b) and Rule 10b-5.*** A Section 10(b) claim requires "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007). If based on omissions, the omission must render an affirmative statement misleading; Rule 10b-5 does not prohibit pure silence. *Macquarie Infrastructure Co. v. Moab Partners, L.P.*, 601 U.S. 257, 263-65 (2024).

***Section 20(a).*** Control-person liability under Section 20(a) requires "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc.*, 493 F.3d at 108. Culpable participation requires particularized facts giving rise to a strong inference that the controlling person knew or should have known the primary violator was engaging in fraud. *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 661 (S.D.N.Y. 2007).

## ARGUMENT

The AC attempts to transform a stock-price drop into a sweeping securities-fraud case, but it never supplies the statutory predicates each claim requires. The Section 11 claim sounds in fraud yet disclaims scienter, fails traceability, and rests on defendant-specific theories defeated by the operative filings and Section 13's repose period. The Section 10(b) claim pleads no strong inference of scienter and no concealed risk that materialized into Plaintiffs' alleged losses. And

with no viable primary violation, the Sections 15 and 20(a) claims necessarily fail. The AC should be dismissed with prejudice.

## I. PLAINTIFFS' SECTION 11 CLAIMS SHOULD BE DISMISSED.

Plaintiffs' Section 11 claim is fatally defective on multiple grounds. Plaintiffs built the claim on the same alleged pump-and-dump scheme that animates their fraud counts, but they disavow scienter and plead none of the facts Rule 9(b) requires. Even if the claim were measured only under Rule 8, it would still fail because Plaintiffs do not plausibly plead traceability and their theories against Mr. Guan, Mr. Zhao, Mr. Li, Mr. Gu, Mr. Wang, Ms. Huang, Cogency, and Ms. DeVries each exceed what Section 11 permits.

### A. The AC Is Subject To Rule 9(b)'s Heightened Pleading Standard.

Plaintiffs' Section 11 claim triggers Rule 9(b) because it is a fraud claim recast in negligence terms. "'[T]he heightened pleading standard of Rule 9(b) applies to Section 11 claims insofar as the claims are premised on allegations of fraud.'" *Fernandes v. Centessa Pharms. PLC*, No. 1:22-CV-8805-GHW, 2024 WL 3638254, at *13 (S.D.N.Y. Aug. 2, 2024) (quoting *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)). Courts consider whether (i) the complaint contains a blanket disclaimer of fraud; (ii) the allegations include classic fraud language; (iii) the complaint shows no non-fraudulent basis for the claim; and (iv) the factual and fraudulent allegations are separated. *See Fernandes*, 2024 WL 3638254, at *13. Each factor supports applying Rule 9(b) here.

*First*, the Third Claim contains only a conclusory, single-sentence disclaimer that it "does not sound in fraud and does not require proof of scienter." (AC ¶ 384.) "Courts have repeatedly noted that the insertion of a simple disclaimer of fraud is insufficient" to avoid Rule 9(b). *In re Axis Capital Holdings Ltd. Secs. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006). *Second*, the AC is saturated with fraud language—describing a "multi-phase pump-and-dump scheme" (AC ¶

4), "orchestrated" by Mr. Geng (AC ¶¶ 4, 335), alleging Defendants "deliberately engineered" the capital structure to make the stock "manipulable" (AC ¶ 46), and charging that Defendants "employed devices, schemes, and artifices to defraud" investors (AC ¶ 374), through conduct "intended to, and did, deceive the investing public." (AC ¶ 373.) *See Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 CIV. 0976 (LAP), 2008 WL 4449280, at *12–13 (S.D.N.Y. Sept. 30, 2008) (applying heightened standard where allegations were "inextricably interwoven with suggestions that [defendants] deliberately turned a blind eye to known deficiencies"); *In re Micro Focus Int'l Plc Sec. Litig.*, No. 1:18-cv-06763-ALC, 2020 WL 5817275, at *16 (S.D.N.Y. Sept. 29, 2020) (identifying "false and misleading" and "untrue statements of material facts" as classic fraud language).

*Third*, the AC shows no non-fraudulent basis for the Section 11 claim. Every alleged misstatement or omission is embedded in the same pump-and-dump narrative: that Mr. Geng "engineered" Jayud's low-float, dual-class structure specifically to facilitate price manipulation (AC ¶¶ 46, 386(a)), and then concealed insider self-dealing arrangements and a planned stockpile of discounted shares (AC ¶¶ 50–55, 82, 386(b)). Plaintiffs offer no severable negligence theory of the Section 11 claim.

*Fourth*, although the AC nominally separates its Exchange Act and Securities Act counts, the First and Third Claims each "repeat[] and re-allege[]" every preceding allegation (AC ¶ 372, 384), incorporating the scienter allegations against Mr. Geng wholesale. (AC ¶¶ 335-364.) That is precisely the pattern triggering Rule 9(b). *See In re Gentiva Secs. Litig.*, 932 F. Supp. 2d 352, 393 (E.D.N.Y. 2013); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 492 (S.D.N.Y. 2006) (applying Rule 9(b) where Plaintiff "'repeat[ed] and realleg[ed] each and every allegation' in the Complaint then attempt[ed] to disclaim those allegations in the very next

paragraph by stating, '[a]ll of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded' from the Section 11 count.").

Because the pump-and-dump narrative triggering Rule 9(b) is inseparable from Jayud's conduct as the issuer at the center of that narrative, this sounds-in-fraud conclusion applies to the Third Claim as pleaded against every defendant—including Jayud, the Individual Defendants, and the Registered Agent Defendants. *See Jackson v. Abernathy*, 960 F.3d 94, 98-99 (2d Cir. 2020) (observing that imputing an individual's adequately pleaded scienter to the company is the "most straightforward way to raise a strong inference of corporate scienter," but that path requires the plaintiff first to plead the individual's own scienter with the particularity Rule 9(b).).

**B. The AC's Section 11 Claim Does Not Meet Rule 9(b)'s Pleading Standard.**

Because the Section 11 claim sounds in fraud, it must satisfy Rule 9(b), including its requirement to plead facts with particularity, including those supporting the allegation that each defendant knew, or was reckless in not knowing, that the challenged statements were false or misleading. *Rombach*, 355 F.3d at 171; *Coronel*, 2009 WL 174656, at *16; *In re Chembio Diagnostics*, 616 F. Supp. 3d 192, 203 (E.D.N.Y. 2022); *see also Police & Fire Ret. Sys. v. SafeNet, Inc.*, at 241 (S.D.N.Y. 2009) (when a Securities Act claim sounds in fraud, a plaintiff must allege "fraudulent intent with more specificity."). Plaintiffs do not do so.

Here, Plaintiffs disclaim scienter for the Third Claim altogether (AC ¶ 384) while directing the overwhelming majority of their scienter allegations at Mr. Geng alone. (AC ¶¶ 335–351.) The AC contains no particularized scienter allegation against Mr. Zhao, Mr. Li, Mr. Gu, or Mr. Wang beyond their status as IPO Registration Statement signatories (AC ¶¶ 24, 26–28), and none against Mr. Guan beyond his status as Co-CEO when the December Prospectus Supplement was filed. (AC ¶ 21.) Nor does the AC plead particularized fraud against Jayud independent of the scienter

attributed to Mr. Geng; its blanket disclaimer in AC ¶ 384 draws no distinction between Jayud and the Individual Defendants. Merely alleging that a defendant signed a registration statement or held a title does not suffice.

The pleading defect is dispositive. Plaintiffs cannot plead a Section 11 claim through an omnipresent fraud narrative, expressly disclaim scienter for that same claim, and still avoid Rule 9(b). *See In re Gentiva*, 932 F. Supp. 2d at 394. Because the AC fails to plead fraud with particularity, the Section 11 claim should be dismissed as to Jayud and each Individual Defendant.

The same defect applies to the Registered Agent Defendants. The AC alleges only that Cogency provided registered-agent functions, that DeVries executed the registration statements on Cogency's behalf, and that neither conducted an independent investigation. (AC ¶¶ 42–43, 88, 92–94.) Those allegations do not identify fraud by either defendant with the particularity Rule 9(b) requires.

### C. The Claims Against The Registered Agent Defendants Should Be Dismissed Or Narrowed.

The Section 11 claim against the Registered Agent Defendants should be dismissed for two straightforward reasons. *First*, to the extent the claim is premised on the IPO Registration Statement, it is time-barred by Section 13's three-year statute of repose. Jayud's IPO closed on April 21, 2023 (AC ¶ 56), and Plaintiffs did not assert any Section 11 claim until June 9, 2026—more than six weeks after the repose period expired. Section 13 provides that, "[i]n no event," may a Section 11 action be brought more than three years after the security was bona fide offered to the public. 15 U.S.C. § 77m. That is an absolute repose bar, not a limitations period subject to equitable tolling. *See Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 528 U.S. 497, 506 (2017); *Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 109 (2d Cir. 2013). *Second*, the Section 11 claim against DeVries fails because the public filings incorporated by the AC identify Cogency as

Jayud's authorized U.S. representative and specifically state that DeVries signed "on behalf of Cogency Global Inc."

***Form F-1:***

**SIGNATURE OF AUTHORIZED REPRESENTATIVE IN THE UNITED STATES**

Pursuant to the Securities Act of 1933, the undersigned, the duly authorized representative in the United States of Jayud Global Logistics Limited, has signed this Registration Statement or amendment thereto in New York on February 17, 2023.

Authorized U.S. Representative-
Cogency Global Inc.

By: /s/ Colleen A. De Vries
Name: Colleen A. De Vries
Title: Senior Vice-President on behalf of Cogency Global Inc.

***Form F-3:***

**SIGNATURE OF AUTHORIZED REPRESENTATIVE IN THE UNITED STATES**

Pursuant to the Securities Act of 1933 as amended, the undersigned, the duly authorized representative in the United States of America, has signed this registration statement thereto in New York on June 6, 2024.

Authorized U.S. Representative-Cogency Global Inc.

By: /s/ Colleen A. De Vries
Name: Colleen A. De Vries
Title: Senior Vice-President on behalf of Cogency Global Inc.

The AC alleges no separate signature by DeVries, no position as a Jayud officer or director, no consent to be named as a Jayud director or prospective director, and no other fact placing DeVries within an independent Section 11 category. (AC ¶¶ 42–43, 92, 388(f)); *but cf. Wang v. Cloopen Group Holding Limited*, 661 F. Supp. 3d 208, 238-239 (S.D.N.Y. 2023) (denying motion

to dismiss Section 11, 15 claims where Registration Statement did not state it was signed "on behalf of Cogency Global Inc.")[2]. The filings therefore contradict the conclusory allegation that DeVries individually was the statutory signatory. *See Rombach*, 355 F.3d at 164 (courts may consider documents incorporated by reference on a motion to dismiss). The Court should dismiss the Section 11 claim against DeVries.

### D. The AC Fails To Meet Rule 8's Basic Pleading Standard As To Mr. Guan.

Mr. Guan's Section 11 liability fails because the AC's two statutory theories both depend on the December Prospectus Supplement creating a new effective date—a result that requires a "fundamental change" the AC never pleads. The AC asserts two statutory bases for Mr. Guan's Section 11 liability, both tied to the December Prospectus Supplement: a Section 11(a)(1) signer theory (he signed the supplement as Co-CEO) and a Section 11(a)(2) officer-at-filing theory (he was Co-CEO when it was filed). (AC ¶ 138(i)). Both depend on treating the December Prospectus Supplement, rather than the Shelf Registration Statement, as the operative filing triggering Mr. Guan's liability window, and both fail because the AC does not plausibly plead that the supplement worked a "fundamental change" to the Shelf.

SEC Rule 430B governs both theories. Rule 430B(f)(2)'s automatic new-effective-date rule applies only to "the issuer and any underwriter at the time only"—not individual directors or officers. *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 987 F. Supp. 2d 369, 374 (S.D.N.Y. 2013). Because Mr. Guan is sued individually, only Rule 430B(f)(4) can govern his liability window. Under (f)(4), a supplement creates a new effective date only where it reflects "a fundamental change in the information set forth in the registration statement." 17 C.F.R. §

[2] Defendants submit that *Cloopen* is distinguishable and should not control here, where the Registration Statement explicitly states that Ms. DeVries signed as "Senior Vice President *on behalf of Cogency Global Inc.*"

229.512(a)(1)(ii); *see Zornberg v. NAPCO Sec. Techs., Inc.*, 778 F. Supp. 3d 516, 532–33 (E.D.N.Y. 2025). "[A] change may be material without being fundamental." *Zornberg*, 778 F. Supp. 3d at 533.

On a motion to dismiss, the Court determines "whether it is plausible to infer" that the supplement was filed in response to a fundamental change. *Id.* Compare *Zornberg*, 778 F. Supp. 3d at 533–34 (dismissing claims where supplements repeated the same inventory treatment already in the registration statement), *with HSBC*, 987 F. Supp. 2d at 376 (exception applied where supplements "contained virtually all of the detail about the underlying collateral" that the shelf had omitted entirely). Mr. Guan became Co-CEO only in December 2024—six months after the Shelf's effective date—and he neither signed nor is alleged to have signed the Shelf Registration Statement itself; his only connection to any registration document is his signature on the December Prospectus Supplement in his capacity as Co-CEO. (AC ¶¶ 21, 138, 302.)

Both of the AC's theories therefore work only if the December Prospectus Supplement's filing date, rather than the Shelf's June 2024 effective date, controls Mr. Guan's liability window—which, under Rule 430B(f)(4), requires a fundamental change to the information the Shelf Registration Statement had already set forth.

The AC never pleads a fundamental change. It never uses that phrase, identifies what change the December Prospectus Supplement effected in the Shelf's information, and never alleges the December offering altered—rather than merely implemented—the Shelf's terms. The supplement's "Recent Developments" section discloses only board approval of an incentive plan and the mechanics of already-disclosed transactions (AC ¶ 315)—precisely the kind of routine "variations in matters such as operating results, properties, business, [and] product development" that "ordinarily would not be fundamental." *Zornberg*, 778 F. Supp. 3d at 533. Its disclosure that

Jayud had borrowed and repaid approximately $1.05 million from Mr. Geng (AC ¶¶ 177–181) is likewise routine subsequent-events reporting, not a fundamental change.

Unlike the registration statements in *HSBC*, where the supplements supplied "virtually all of the detail" the shelf had omitted, 987 F. Supp. 2d at 376, the Shelf here already incorporated Jayud's Forms 20-F and Exchange Act reports (AC ¶ 303), and the December Prospectus Supplement added only routine post-effective reporting to the Shelf's description of Jayud's business or financial condition. *See Zornberg*, 778 F. Supp. 3d at 533–34.

Because the December Prospectus Supplement did not work a fundamental change, Rule 430B(f)(4)'s exception does not apply, and the effective date as to Mr. Guan remains the Shelf's June 2024 effective date—before he joined Company management. *See Zornberg*, 778 F. Supp. 3d at 534.

Because Rule 430B forecloses both theories absent the fundamental change the AC fails to plead, the Section 11 claim against Mr. Guan should be dismissed.

**E. The AC Fails To Meet Rule 8's Basic Pleading Standard As To Traceability.**

Traceability is a threshold requirement for Section 11 standing, and Plaintiffs do not plausibly plead it. Section 11 reaches only securities "issued pursuant to the allegedly misleading registration statement," not securities bearing some "minimal relationship" to that filing. *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 768 (2023). That rule established in *Barnes v. Osofsky*, 373 F.2d 269, 271–73 (2d Cir. 1967) (Friendly, J.), requires aftermarket purchasers to trace their shares to the specific challenged registration statement. *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 61 (S.D.N.Y. 2013).

Where multiple registration statements are implicated, traceability requires "proof of a direct chain of title from the original offering to the ultimate owner." *Ho v. Duoyuan Glob. Water*,

*Inc.*, 887 F. Supp. 2d 547, 561 (S.D.N.Y. 2012) (internal quotations and citations omitted). A plaintiff must still plausibly allege traceability. *In re Pareteum Sec. Litig.*, No. 19 Civ. 9767 (AKH), 2021 WL 3540779, at *20 (S.D.N.Y. Aug. 11, 2021). And where multiple classes or offerings are at issue, standing exists only for the specific class and offering the plaintiff actually purchased under. *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 529 n.7 (S.D.N.Y. 2005).

That standard cannot be met here. By the time Plaintiffs allege they purchased shares "during the Class Period" (AC ¶¶ 17–18), the 1,250,000 IPO shares had been diluted by four intervening issuances: September 2024 convertible debentures (2,069,382 shares), October 2024 PIPE (14,793,335 shares), October 2024 acquisition-consideration issuance (7,290,267 shares), and December 2024 registered direct offering (50,000,000 shares) (AC ¶¶ 136, 139, 153, 158)—expanding Jayud's outstanding Class A shares to approximately 90,112,868. (AC ¶ 36.) The original IPO tranche thus represented less than 1.4% of Class A shares in the market. Where intervening offerings make the "obvious alternative explanation"—that shares came from the pre-existing pool—as plausible as the plaintiff's theory, the complaint fails. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation.") (citing *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (internal quotation marks omitted)). Here, the alternative is even more compelling: Plaintiffs' shares could have come from the IPO, the Shelf Registration Statement and December Prospectus Supplement, or any of three other intervening issuances, and the AC excludes none.

Plaintiffs' pleading confirms the problem. They allege only that they "purchased Jayud Class A ordinary shares during the Class Period" (AC ¶¶ 17–18) and "acquired Jayud securities

pursuant or traceable to the IPO Registration Statement ... and/or the Shelf Registration Statement." (AC ¶ 385.) That disjunctive formulation is "merely consistent with" Plaintiffs' theory but equally consistent with the obvious alternative that their shares came from one of the several other sources of freely tradeable Class A shares Jayud issued after the IPO—precisely the "neutral territory" *Iqbal* and *Twombly* forbid. *In re Century Aluminum*, 729 F.3d at 1108.

Even where a plaintiff pleads specific purchase dates, prices, and contemporaneous trading-volume spikes, the Ninth Circuit has held those allegations insufficient because they did not "tend to exclude the possibility" that shares came from the pre-existing pool. *Id.* at 1108–09. Plaintiffs here plead less: no purchase date, no purchase price, and no fact tying either Plaintiff's purchase to the IPO Registration Statement or the Shelf Registration Statement rather than the other intervening offerings.

Nor can Plaintiffs rely on the "fungible mass" theory, where every purchaser is deemed to own a pro rata interest in shares issued under a challenged registration statement of tracing, to establish standing. *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 498-99 (5th Cir. 2005) (rejecting statistical tracing and citing *Kirkwood v. Taylor*, 590 F. Supp. 1375, 1380-81 (D. Minn. 1984), *aff'd*, 760 F.2d 272 (8th Cir. 1985), for the proposition that the "fungible mass theory would ... effectively circumvent the tracing requirement"). The Fifth Circuit's reasoning in *Krim* drew directly on the Second Circuit's decision in *Barnes*, which confronted "an intermingled stock pool not unlike the one" at issue there and confined Section 11 standing to those who could actually trace their purchases to the challenged offering. *Krim*, 402 F.3d at 499 (discussing *Barnes v. Osofsky*, 373 F.2d 269 (2d Cir. 1967)). Because the Supreme Court has since confirmed that *Barnes* states the rule, every circuit to consider the question has adopted it. *Pirani*, 598 U.S. at

768. Plaintiffs' theory—that a bare allegation of purchasing "during the Class Period" suffices where four intervening offerings further commingled the pool—fails for the same reason.

The gap is especially glaring given the PSLRA's certification requirement. Each named plaintiff's certification must set forth all transactions in the security during the class period, including the relevant dates. 15 U.S.C. § 78u-4(a)(2)(A)(iv). Plaintiffs' own certifications therefore necessarily specify when Salem and Schuermann bought their shares, yet the AC conspicuously omits that information (AC ¶¶ 17–18)—omitting exactly the fact that might allow the Court to determine which, if any, of the five Class A offerings each Plaintiff's shares could plausibly trace to.

Because traceability is an element of the Section 11 claim, the AC's failure to plead it plausibly warrants dismissal under Rule 8 and Rule 12(b)(6) for failure to state a claim. *See In re Century Aluminum*, 729 F.3d at 1109–10 (a plaintiff's failure to plead traceability results in failure to state a claim under Rule 12(b)(6), not a defect in subject-matter jurisdiction, because Article III standing exists independently of which pool of shares a plaintiff's shares came from).

### F. The Section 11 Claims Against Mr. Zhao, Mr. Li, Mr. Gu, Mr. Wang, and Ms. Huang Fail As The Shelf/December Theory Is Foreclosed On The Merits, And The Remaining IPO-Based Theory Is Time-Barred.

Two independent defects eliminate all Section 11 exposure for Mr. Zhao, Mr. Li, Mr. Gu, Mr. Wang, and Ms. Huang. First, their only theory connecting them to the Shelf Registration Statement and December Prospectus Supplement—incorporation by reference—is foreclosed by the Shelf's own language. Second, their remaining theory—liability for the IPO Registration Statement—is time-barred under Section 13's statute of repose, and neither equitable tolling nor Rule 15(c) relation back can revive it.

**1. The Shelf Incorporation-Clause Theory Fails On The Merits.**

The AC's liability theory for Mr. Zhao, Mr. Li, Mr. Gu, and Mr. Wang is not that they signed the Shelf or December Prospectus Supplement—they did not—but that, as IPO Registration Statement signatories, each "bears liability for material misstatements and omissions contained in the IPO Registration Statement and in the Shelf Registration Statement and December Prospectus Supplement to the extent they incorporated material misstatements from the IPO Registration Statement." (AC ¶ 388.) That theory depends on the Shelf having incorporated the IPO Registration Statement by reference.

It did not. The AC itself quotes the Shelf's incorporation clause in full: it incorporates by reference only "(a) our Annual Report on Form 20-F for the fiscal year ended December 31, 2022; (b) our Annual Report on Form 20-F for the fiscal year ended December 31, 2023; and (c) all subsequent annual reports ... and all reports on Form 6-K that we identify in such reports as being incorporated by reference." (AC ¶ 303.) The IPO Registration Statement appears nowhere on that list.

Where, as here, a plaintiff's own complaint quotes the operative document, that language controls over contrary characterization in the complaint's conclusory allegations. *See In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 101 (2d Cir. 2013) (Section 11 liability attaches only where "'any part' of the operative registration statement[]" contains the alleged misstatement) (citations omitted). Because the Shelf's incorporation clause forecloses the premise on which Plaintiffs' theory depends, the AC fails to state a claim against Mr. Zhao, Mr. Li, Mr. Gu, and Mr. Wang with respect to the Shelf and December Prospectus Supplement, and Rule 8 requires dismissal of that portion of the Third Claim.

The same defect defeats the parallel theory against Ms. Huang, whose IPO-era consent status is extended to the Shelf and December Prospectus Supplement on the same incorporation premise. (AC ¶ 388.)

**2. The Remaining IPO-Based Theory Is Time-Barred By The Statute Of Repose And Is Not Saved By Equitable Tolling Or Relation Back.**

Even if the Section 11 claim otherwise stated a claim as to the IPO Registration Statement, that theory is untimely. Three independent doctrines confirm that any claim tied to the IPO Registration Statement is time-barred.

Section 13's three-year statute of repose, 15 U.S.C. § 77, runs from the date the security was "bona fide offered to the public." *IndyMac*, 721 F.3d at 107. Jayud's IPO closed on April 21, 2023. (AC ¶ 56.) Three years later, on April 21, 2026, the repose period expired. Plaintiffs did not assert the Section 11 claim until June 9, 2026—more than six weeks after repose had run.

Equitable tolling cannot revive the claim. Statutes of repose create a substantive right to be free from liability after a fixed period and are not subject to equitable tolling. *CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014). The Second Circuit has applied that rule to Section 13 specifically, holding that neither tolling nor relation back may revive a claim after the three-year period expires, because doing so would "necessarily enlarge or modify a substantive right" the statute of repose provides. *IndyMac*, 721 F.3d at 109.

Relation back under Rule 15(c) likewise cannot save the newly added Section 11 and Section 15 claims. The AC is the first pleading to assert any Section 11 or Section 15 claim and the first to name Mr. Zhao, Mr. Li, Mr. Gu, Mr. Wang, and Ms. Huang—together with The Benchmark Company, LLC and the Registered Agent Defendants—as defendants. Rule 15(c)(1)(C) permits relation back only where a new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's

identity.” *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 547 (2010). Mr. Zhao, Mr. Li, Mr. Gu, and Mr. Wang were each identifiable on the face of the IPO Registration Statement, which they signed as directors (AC ¶¶ 24, 26-28); Ms. Huang was likewise named with her consent in that same document. (AC ¶ 25.) Failure to name readily identifiable individuals is “a matter of choice, not mistake,” and does not support relation back. *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994), *abrogated in part on other grounds*, *Nat’l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *see also Hogan v. Fischer*, 738 F.3d 509, 517–18 (2d Cir. 2013).

Because the Section 11 and Section 15 claims were not asserted in any form in the original complaint, they are new claims for relief, not amendments to an existing claim arising from the same conduct, and Rule 15(c)’s relation-back mechanism does not apply to claims that did not exist when the limitations and repose periods began to run. *See IndyMac*, 721 F.3d at 109.

For each of these independent reasons, any Section 11 claim tied to the IPO Registration Statement is time-barred and should be dismissed with prejudice. As to Mr. Zhao, Mr. Li, Mr. Gu, Mr. Wang, and Ms. Huang specifically, that conclusion disposes of their entire Section 11 exposure.

## II. PLAINTIFFS’ SECTION 10(b) CLAIM SHOULD BE DISMISSED.

The Section 10(b) claim fails independently on two grounds. *First*, Plaintiffs rely on titles, access allegations, and collective pleading instead of particularized facts showing scienter as to any Defendant. *Second*, they identify no concealed risk revealed by the April 2025 price decline; the volatility risk at the center of their theory was disclosed in the IPO Registration Statement’s Risk Factors.

**A. Plaintiffs Fail To Plead Scienter With The Particularity Required Under The PSLRA.**

The PSLRA requires particularized facts giving rise to a strong inference that each defendant acted with scienter—an inference "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 324 (2007). Plaintiffs do not meet that standard. Their allegations rest on corporate titles, generalized access, and collective references to "Individual Defendants," rather than facts showing any defendant knew a specific statement was false when made. Measured defendant by defendant, the allegations do not support a strong inference of fraudulent intent:

- Ms. Bao and Ms. Hu (former and current CFO): The AC alleges only that Ms. Bao "was responsible for the Company's financial reporting and public disclosures" until March 2025 and that Ms. Hu succeeded her "including during the crash" (AC ¶¶ 22–23)—title-based allegations with no fact showing either woman knew a specific statement was false when made.

- Mr. Guan (Co-Chief Executive Officer from December 2024): The AC alleges only that Mr. Guan "participated in the management and direction of the Company during the critical pre-crash period and had access to material non-public information" (AC ¶ 21)—generic "access and opportunity" language insufficient to plead scienter.

- Ms. Huang (Chief Operating Officer): The AC's scienter theory for Ms. Huang rests entirely on "her senior officer position, her continuous stock ownership of Tucana ... and her common-address holding-entity structure with Defendants Mr. Geng and Mr. Zhao" (AC ¶ 25)—facts describing status, not knowledge.

- Mr. Zhao (director and Chief Marketing Officer): Beyond his IPO Registration Statement signature and his identification in a related-party-transactions note (AC ¶ 24), the AC alleges no fact showing Mr. Zhao knew of, or was reckless in disregarding, the falsity of any specific statement when made.

- Mr. Li, Mr. Gu, and Mr. Wang (outside directors): The AC's entire allegation as to each is that he "has served as a director of Jayud since March 31, 2023" and "signed the IPO Registration Statement" (AC ¶¶ 26–28)—no statement, action, or item of knowledge is attributed to any of them individually.

Corporate scienter as to Jayud fails for the same reasons. No Individual Defendant's scienter is adequately pleaded, so there is no "connective tissue" to impute scienter to the

Company. *Jackson*, 960 F.3d at 98-99. The same conclusion follows *a fortiori* as to the Registered Agent Defendants, whose only alleged conduct is providing registered-agent services and signing the IPO and Shelf Registration Statements.

Even as to Mr. Geng, whose conduct the AC describes in greatest detail, the allegations reduce to insufficient motive-and-opportunity theories: that Mr. Geng signed filings, that discounted placements financed repayment of his personal loans, and that he had a general interest in the Company's success as founder and controlling shareholder. Such motives "generally possessed by most corporate directors and officers" do not support a strong inference of fraudulent intent. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). The remaining fraud allegations against Mr. Geng consist of ambiguous inferences (from acquisition timing, PIPE carve-outs, and Schedule 13G patterns) rather than particularized facts showing knowledge of specific false statements.

The AC's generic allegation that Defendants "knew or acted in reckless disregard" (AC ¶ 375) is precisely the conclusory recitation that Rule 9(b) and the PSLRA forbid. *See Dane*, 974 F.3d at 188-89.

The group-pleading doctrine cannot fill the gap for Mr. Li, Mr. Gu, and Mr. Wang. The AC alleges collectively that the "Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings" and "each ... knew or recklessly disregarded the adverse facts specified herein." (AC ¶ 37.) But group pleading cannot substitute for the particularized "maker" showing Section 10(b) requires: liability "will not expand ... beyond the person or entity that ultimately has authority over" a statement. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–44 (2011). Courts reject group pleading as a means of attributing corporate statements to defendants who lack "ultimate authority over the statements at

issue." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 640–41 (S.D.N.Y. 2017). Thus, the mere presumption that a defendant worked on a statement by virtue of his corporate role is not enough. *See Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 363–64 (S.D.N.Y. 2022) *see also In re UBS AG Sec. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *10 (S.D.N.Y. Sept. 28, 2012) ("[A] theory of liability premised on treating corporate insiders as a group cannot survive a plain reading of the Janus decision.").

Mr. Li, Mr. Gu, and Mr. Wang are alleged to be outside directors with no officer title and no personal statement attributed to any of them (AC ¶¶ 26–28); the AC does not allege that any had a role in preparing any challenged statement or was involved in Jayud's day-to-day operations. Even under the narrower view that a vestige of group pleading survives *Janus* for directors with an "insider" role, that vestige requires a showing of actual involvement in the preparation of the statements—a showing not attempted here. *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 241–42 (S.D.N.Y. 2018).

**B. Plaintiffs Fail To Plead Loss Causation.**

Plaintiffs' loss-causation theory is self-defeating. Plaintiffs allege that Jayud's low-float structure made its stock vulnerable to volatility and manipulation, but that risk was disclosed in the IPO Registration Statement's Risk Factors. A disclosed risk cannot later "materialize" as a concealed one. Loss causation requires "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff," *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005), and a materialization-of-the-risk theory requires that the alleged misstatement "concealed something from the market that, when disclosed, negatively affected the value of the security." *Id.* at 173. A risk that was itself disclosed cannot have been concealed and later materialize. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) ("the

misstatement or omission concealed something from the market that, ***when disclosed***, negatively affected the value of the security.") (emphasis added).

The AC identifies no concealed risk that materialized to cause the April 1-2, 2025 crash. Plaintiffs allege only that Jayud's securities "traded at artificially inflated prices" and that the price "declined significantly when the truth was revealed through the April 2025 crash" (AC ¶ 365), but never identify what concealed fact came to light on April 1 or April 2, 2025, or through what disclosure.

The very risk Plaintiffs say Defendants concealed—that Jayud's low-float, dual-class structure made the stock susceptible to extreme volatility and manipulation—was disclosed in the IPO Registration Statement's Risk Factors, which warned that companies "with relatively smaller public floats" may "experience greater stock price volatility" and that "persons buying or selling in relatively small quantities may easily influence prices." (AC ¶ 284.) Where "substantial indicia of the risk that materialized are unambiguously apparent on the face of the disclosures alleged to conceal the very same risk," a plaintiff must plead facts showing the defendant's fraud—not the disclosed risk—proximately caused the loss. *Lentell*, 396 F.3d at 177. The AC pleads no such facts.

Even under the more permissive "temporal proximity" theory, Plaintiffs' allegations fall short. The AC offers no order-level or trade-level data tying any specific sale to any specific holder or moment in the crash. *See Quantum BioPharma Ltd. v. CIBC World Markets, Inc.*, Slip Copy, Fed. Sec. L. Rep. P 102, 272 (S.D.N.Y. Mar. 30, 2026). Plaintiffs allege only that approximately 45.8 million shares traded on April 2, 2025, and infer—without order-level or trade-level data—that the December Placement Defendants sold their holdings into that volume. (AC ¶¶ 10, 353.) That is, at most, a selling-pressure theory, and selling pressure alone does not supply loss causation. *See In re Salomon Analyst AT&T Litigation*, 350 F. Supp. 2d 455, 471 (S.D.N.Y. 2004)

([“I]n this Circuit, in the context of misrepresentation cases, mere price inflation, where the ultimate deflation is caused by other factors unrelated to the misrepresentation alleged, cannot satisfy the loss causation requirement.”). And because the First Claim fails for lack of loss causation, the derivative Second Claim under Section 20(a) fails as well. *See ATSI Commc’ns Inc.*, 493 F.3d at 108.

## III. PLAINTIFFS’ SECTIONS 15 AND 20(a) CONTROL-PERSON CLAIMS SHOULD BE DISMISSED.

The control-person claims are derivative and rise or fall with the underlying claims. Section 20(a) requires a primary violation, control, and culpable participation. *ATSI Commc’ns Inc*., 493 F.3d at 108. Section 15 likewise depends on a viable Section 11 claim. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 358. Because the AC pleads no primary violation and no particularized facts showing culpable participation by any Individual Defendant, Plaintiffs fail to state a claim under either statute.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Plaintiffs' Amended Complaint against Jayud, Mr. Geng, Mr. Guan, Ms. Bao, Ms. Hu, Mr. Zhao, Ms. Huang, Mr. Li, Mr. Gu, Mr. Wang, Cogency and Ms. DeVries, in its entirety and with prejudice.

Dated: New York, New York
August 20, 2026

Respectfully submitted,

*/s/ Richard J.L. Lomuscio*

Richard J.L. Lomuscio
Nicole Khalouian
**STINSON LLP**
140 Broadway, Suite 2330
New York, New York 10005
(646) 883-7471
richard.lomuscio@stinson.com
nicole.khalouian@stinson.com

*Attorneys for Defendants Jayud Global Logistics Limited, Xiaogang Geng, Alan Tan Khim Guan, Lin Bao, Mengmeng Hu, Dun Zhao, Feiyong Li, Steven Gu, Jian Wang, and Jianhong Huang*

*/s/ Joanna A. Diakos*

Joanna A. Diakos
Zach Jones
**K&L GATES LLP**
599 Lexington Avenue
New York, NY 10022
(212) 536-4807
joanna.diakoskordalis@klgates.com
zach.jones@klgates.com

*Attorneys for Defendants Cogency Global Inc. and Colleen DeVries*

**CERTIFICATE OF COMPLIANCE**

I, Richard J.L. Lomuscio, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c), that the foregoing Memorandum of Law was prepared using Microsoft Word and does not exceed 8,705 words pursuant to Rule 4.B. of Judge Broderick's Individual Rules & Practices in Civil Cases.

Dated: New York, New York
August 20, 2026

*/s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio